This is our third case in the morning, 4-11-0210, Griggsville-Perry Community Unit School District v. IELRB. For the appellate, Mr. Custer. For the appellate, Mr. Kornfield and Mr. Truitt. Are you both going to argue? Have you split your time? When we've arranged this, Mr. Truitt will go first and give an easy supplement of what we're arguing. We're going to limit our time. We understand. You may proceed. May it please the court, counsel, I represent the appellant, Griggsville Community Unit School District, in this case. And we believe that the decision of the IELRB is clearly erroneous as a matter of law and should be reversed for the following five reasons. First, that the holding in this court in the Board of Education of Harrisburg Community Unit School District was misconstrued by the IELRB and the arbitrator. Second, the bargaining history of the parties clearly show that no standard of dismissal for employees was included in the collective bargaining agreement. What did 2.6 mean? 2.6 was a procedure by which, if an employee was called for discipline before the Board of Education, what the procedures would be. A written notice of the reasons and the opportunity to be represented by a representative. Those were procedural, not substantive. Was this person an at-will employee? We believe that employee was an at-will employee under the provisions of the collective bargaining agreement. Those employees were at-will. Was she discharged for disciplinary reasons? Well, I think that she was discharged for performance deficiencies. And to the extent that there was an opportunity for her to appear before the Board of Education that she requested, the provisions of 2.6 of the agreement were complied with. Third reason is that the arbitrator, by construing paragraph 6.2 to include formal due process procedures and a standard for employee dismissal, did not draw his award from the essence of the collective bargaining agreement, but from his own brand of industrial justice. Fourth, that the prohibition in paragraph 4.4B in the collective bargaining agreement that an arbitrator cannot amend, modify, ignore, or add to the provisions of the collective bargaining agreement has been completely ignored by both the arbitrator and the ILRB. And the fifth and final reason would be that by whatever name the arbitrator or the ILRB may call the standard of dismissal, the way it was applied is essentially a just cause provision that has been read into the collective bargaining agreement. This is a result the union could not gain at the bargaining table, but attempted to gain through arbitration. To elaborate a bit more with regard to the reasons, the Board of Education, the Harrisburg case, as decided by this court, clearly the court's holding was that one could not read into a collective bargaining agreement a standard of dismissal that had not been expressly agreed to by the parties, and while there could be procedural due process provisions, but that did not mean that in considering in the Harrisburg the dismissal of the teacher that the Board's discretion was in any way limited. We believe that that authority should be followed in this case and that the actions of the Grigsville-Perry Board of Education were consistent with the holding in the Harrisburg case. The bargaining history of this contract clearly shows that the union attempted to propose, or did propose, a progressive discipline provision which would have brought with it a just cause dismissal proceeding. The Board's response was a lengthy procedure which basically would have established an against-the-manifest-weight standard of the evidence and would not allow the arbitrator to have any discretion other than to determine whether or not that manifest weight of the evidence of the Board of Education's decision had been met. Well, the arbitrator did recognize and did state that the union did fail to secure the just cause provision in the agreement. That is true. However, the test of arbitrariness or reasonableness which the arbitrator applied, the way the arbitrator applied that was very much akin to a just cause standard. Well, but didn't he just seem to think that 2.6 had to mean something? It meant what it said, and that was that the employee, if they were going to appear before the Board of Education, would get prior written notice of the reasons and could be accompanied by a representative. Nothing more, nothing less. Who was, what was it, Amber Allen, the principal of the school? Yes, Andrea Allen was the high school principal. She was aware of the notes, or anybody else was aware of Allen's notes? Say, for example, of March 9th, April 20th, the 28th, and October 18th of 07? Yes. Who was aware of them? Well, those were notes of when she had had conversations with Ms. Heyer about concerns into her performance. Those notes were then produced as part of the request by Ms. Heyer and her union representative to see her personnel file. Does that answer your honors question? Okay. In terms of that bargaining history, there was also, as a part of the Board's proposal, a de novo standard that would have allowed the arbitrator's decision to be reviewed to make sure the manifest weight of the standard was complied with. The union would not accept that. The proposal was to mutually withdraw both, all of those proposals with regard to that and some of the other provisions that had been proposed at that point in the bargaining. So the union decided not to pursue the hard bargaining that was on that particular subject. And what we are left with is no standard and the default in Illinois that employment is by will, at will employment. And there was no standard for dismissal that was contained in that agreement. And we believe that any attempt, whether it's a reasonable standard, whether it's a just cause standard, to be implied in that agreement is exceeding the arbitrator's power. The arbitrator, by including in his proposal, I think, or award, a list of maybe five or six different kinds of due process procedures, those are all the sort of thing I would expect to be involved in if I was involved in a just cause dismissal or a teacher tenure dismissal case. Does the Board of Education of District 155 help you? I'm sorry, Board of Education 155. Against the ILERB. I'm sorry, I'm not coming to mind with that. Is that the Niles case? I'm sorry. I was reading as it meaning that there are very few grounds exist for finding that an arbitration award is not binding. Yes. Clearly, there is a limited scope of review. We have never disputed that. But Illinois courts have been very clear that if the award is clearly erroneous as a matter of law, it can be, an arbitrator's decision can be reversed. And it is extremely important that there be within this arbitration system the ability to have that review. Because I believe this case gives an excellent example of what I consider to be an abuse of the system. The arbitrator rendered his award. The ILRB remanded it back to him to do that in light of the Harrisburg case. The arbitrator just reinterpreted his award and came out in the same position. And if there isn't an opportunity to review that, what we will have, and what this case shows, is arbitrators who will have the authority to be able to just distinguish appellate court decisions. And if the standard of review is so high that it's not possible to address that in various cases, we've got a system that's fundamentally flawed. And in this case, there was a reinstatement of hires in the initial award, which is a remedy that is very consistent with just cause. And then after that review by the arbitrator on remand to revise the case, or his opinion in light of Harrisburg, he comes out to the same position. When in fact, this court in Harrisburg, in that case, vacated the reinstatement on remand and instructed that the arbitrator should have a remedy that was not consistent with a just cause type of remedy. So we feel very strongly that it's important to be able to preserve the ability of a review of arbitrators' decisions that make sense, because otherwise, what we negotiated at the table, what we believed and what I believe the record shows we were to get, to allow the arbitrator to come in and rewrite the agreement to something totally different, undermines the entire idea of collective bargaining. The parties are to establish what they agree to and how they're going to conduct their relationship. And in this case, the arbitrator completely rewriting this agreement in a very important part makes that process very difficult for laymen to understand why they should have confidence in this kind of a system. In this school district, is it your position that all the employees are at will? The non-certified would be at will. Non-certified. So the only distinction in the class to which this individual belongs is that she's non-certified. Correct. So she could work for the district for 5 years, 10 years, 15 years, 20 years. It wouldn't matter. Correct. And if the union had wanted to bargain with us, and I think this is important, they proposed progressive discipline. We proposed another provision with regard to discipline. Far apart, but the union didn't continue in that negotiations. They withdrew those proposals, so we're left with what we have. In the many subsequent successor agreements that are negotiated, nothing has been changed with regard to this provision. Would the progressive discipline, would that have mirrored what needed to be done with a certified employee if the school district was seeking to? Not necessarily, because with a certified employee, a certified teacher, the provisions of 2412 of the school code set forth what the procedures are. That includes progressive discipline. Not necessarily. Not necessarily progressive discipline. Depending upon the nature of the offense. It really is a question of whether the conduct is remedial or irremediable. And if it's irremediable, then it goes to a potential of discharge immediately. And that's why, in terms of the prohibition in paragraph 4.4b, about not changing the, an arbitrator can't modify, amend, ignore, or add provisions to the collective bargaining agreement. Well, the arbitrator has certainly amended by identifying the additional procedural steps by including the test of arbitrariness or reasonableness, however you want to describe it. And if that provision doesn't have any meaning in the agreement, then how can we rely upon that? And finally, as I've indicated in my argument, by the way this has been approached, it smells like a just cause rose, even though it's been given a different name. Do you have any other questions? Otherwise, I am concluded. Thank you. May it please the Court, I'm Eric Truitt, Assistant Attorney General, and I represent the Board in this case. I'd like to start with the Harrisburg decision, because only one aspect of this Court's decision in that case has been discussed here. The important thing to remember about Harrisburg is that this Court remanded on the specific issue of the just cause remedy, but this Court in essence embraced the arbitrator's ability to give a broad versus a narrow meaning to the contract's term due process in that case. There was a due process clause in Harrisburg. Yes, but only the words due process, and there was an argument in that case between the parties about whether or not due process should be given a limited or an expansive meaning. Specifically, the school district had argued that due process should mean only what the Constitution requires, whereas the union had required that due process can require things above and beyond what the Constitution requires. Well, typically due process requires prior notice before the hearing and decision. That's true. But that's a lot different than this case. If that clause is missing, then you don't need to necessarily, you have the hearing, maybe it's just window dressing, but it's an appearance. If we're going to fire you, do you have anything to say? I would agree that this contract does not have a due process provision, and so the textual analysis of the contracts were different. What I was just simply calling the Court's attention to is that there was an embrace in the Harrisburg decision of the idea that the parties bargain for the contractual language, the most limited or narrowest meaning requirement. In essence, the arbitrator has broad authority as long as it's tied to the essence of the collective bargaining agreement to give terms a broad or narrow construction. When you're looking at the essence of the agreement, do you also look at bargaining history? Yes, bargaining history is relevant to the essence of the agreement. Well, isn't it pretty clear here that the district wanted the non-certified people to essentially be at will, and the union wanted some protections for the non-certified people. They bargained about that, came to no resolution as to any specifics that would be included, and instead just said, well, we'll live with this. You're going to appear before the school board, and you can bring a representative with you. I have two things I'd like to say about that. The first is that if the union settled on 2.6 as a compromise, the reading that the school district has given section 2.6 is narrower in many respects than the protection that the union would have gotten under the school board's initial proposal. And if you recall in the bargaining history, the school board's proposal was rejected as volatile because it was viewed as stripping away many rights that the union thought its employees already suggested. So if the union agreed as section 2.6 as a compromise or a middle ground between the extremes, it would be odd to give it a reading that provides the employees in essence with a window dressing hearing with no other protections. They would have gotten more. Because that would make it more like, even more stringent than what was proposed. In essence, yes. I mean, their theory of the bargaining history is that the union ended up agreeing to something that provided substantially less protections than the school district offered that the union rejected as volatile. Well, that follows Mr. Custer's argument that the union here wanted to leave the matter up in the air and have the arbitrator come up with an interpretation that's favorable to them. But in Harrisburg, Harrisburg pointed out the irony of what you're talking about. You're entitled to a procedure, but then after the procedure, Harrisburg said the district could discharge him from the extra duty assignment without cause. So you're entitled to a formal hearing, but the school board can do whatever they want to at the end of the hearing. And Harrisburg noted that's odd, but that's the way it is. And I believe that that idea is consistent with, if you look at the text of the amended arbitration award, the only requirement there that is arguably substantive is the fourth requirement, basically that it cannot be an entirely irrational or arbitrary decision. The other three requirements are purely procedural about the specificity of the evidence and the ability to raise a defense. So there's nothing in the arbitrator's amended award that requires just cause. You know, the idea of just cause, certainly there are procedural elements to just cause, but an important aspect of just cause is that there is a certain class or a certain threshold of misconduct for which termination is not appropriate. Well, you want us to, I mean, due process isn't in the contract. That's true, but there are... Just cause isn't in the decision by name. But we're supposed to understand what these terms mean and these decisions are imbued with the backdrop of those. Well, I think what would be helpful there is perhaps looking at each of the remedy aspects that the arbitrator required. If you look at the amended arbitration award, there's in essence four procedures that are required. And I can show you how each of those procedures can be tied back to the language of Section 2.6. Because I'm sensing concern here that because there's not a due process language in here that the Section 2.6 does not require any procedures whatsoever, but I think that there's a good case to be made that each of the procedures that are required can be tied back to the language of Section 2.6. When you said that the arbitrator's decision was based on procedure and there was no substance argument made, the arbitrator found that the district did not reserve the power to dismiss arbitrarily or capriciously. That's true. I was referring to the four aspects of the amended arbitration award, the four in the future. It seems like it's a good time to address those directly. So the first one is a requirement of a statement of the specific acts or omissions. And that's tied to the requirement in Section 2.6 that there's reasonable prior written notice. The term reasonable is not self-defining. If the parties include a language like reasonable in an agreement, there's necessarily going to be some interpretation about what reasonable written notice means by an arbitrator. You can't say in bargaining or through a definition of what reasonable means. That's something that's going to have to be flushed out by a decision maker, as you well know, applying reasonableness tests in other contexts. So the idea that there has to be a statement of specific acts or omissions, that's clearly drawn from the essence of Section 2.6. There's a requirement of reasonable written statements, and the arbitrator decided that reasonableness in that context includes a specificity requirement. As Mr. Kester says, the individual can be discharged for any reason. So why do you have to specify some reason? Well, Section 2.6 says the staff member shall be given reasonable prior written notice of the reasons for such reading. The board was going to terminate her. That was the reason they were having the meeting. Well, under his interpretation of Section 2.6, it's in essence an empty formality, and you would wonder why. Yeah, like in Harrisburg. That's the language directly out of Harrisburg. Well, the bargaining history in this case is not necessarily the same as in Harrisburg. Again, in this case. I'm always amazed that we talk about the bargaining history. We do not talk about the contract. We talk about what the people talked about before they reached the contract. Well, I also pointed out that there was reasonable prior written notice of the reasons. That's right in the contract. One would think, regardless of whether there's a substantive component to it, there is a clear textual requirement in the contract to give reasonable prior written notice of the reasons for the meeting. She didn't know why they were having the meeting? Excuse me. She didn't know why they were having the meeting? The arbitrator found that there had been relatively vague and unsubstantiated claims that she didn't smile enough and did not have a good demeanor. Her union representative got copies of the notes that had been made of these previous contacts. Wasn't that reasonable notice? I could see this is something that could be subject to different interpretations by different persons. But again, the parties have contracted for the judgment of the arbitrator. And it's black letter law in review of arbitration agreements that the fact that someone might give a different interpretation of a word is not a sufficient reason for the agreement not to be binding. When the arbitrator said that the district had to give a statement of specific acts or omissions that it alleges justify her discharge, isn't that implying a just cause requirement into the contract? No, because it doesn't, as I argued in our brief, an inherent idea in just cause is that there are some types of employee misconduct that should be subjected to less severe sanctions than termination. So, for example, under the arbitrator's decision, if they had provided specific evidence of her poor demeanor and specific evidence of her inability to relate to students, that would have been sufficient reason to terminate her. And under the arbitrator's award, if they go back and decide to terminate Ms. Hires after a second hearing, as long as it complies with the specificity requirement there, then that would be a reason to terminate her the second time. So there's nothing in the arbitrator's decision that prevents her from being terminated as long as it complies with the four requirements in the amended award. Whereas in Harrisburg, the idea was not only that the school district had to provide all of the requirements of due process, but it also had to show just cause on top of all of those requirements of due process. Meaning that there are some things such as using curse words or not giving the junior varsity team enough time to practice. Those things in and of themselves could never justify termination, even if they were clearly shown by a preponderance of the evidence or with overwhelming proof. So I think there's an important difference between the arbitrariness here, which goes to the vagueness and the lack of detail in the allegations, as opposed to the idea in just cause. Could the district have discharged this person and other persons because of budget problems? They just didn't have enough money? Again, the reasons, as long as it complied with the four requirements of the amended arbitration award, then yes. In the arbitrator's view, it's not the idea that budgetary reasons can never justify the dismissal of an employee, just as it seemed to be the idea of the arbitrator in Harrisburg that the fact that you didn't use the junior varsity team enough, that's not a reason to take away someone's job. Well, if you can discharge for budgetary reasons, then you're saying that there does not have to be some misconduct that's justifying the discharge. The district can do it whenever they feel it's necessary. Misconduct is not required. That is correct. But again, you still have to comply with Section 2.6 of the CBA, and I've already shown that the first and the second requirement in the amended arbitration award are directly tied to the language of the CBA, the phrase, given reasonable prior written notice of the reasons of such meeting. So, for example, using Justice Cook, your budget example, presumably the requirement there would be some specificity about the budgetary requirements of the district, as well as, you know, why the termination of this position would result in the reduction of the district's budget problems. So these first two requirements in the amended arbitration award really just go to providing adequate notice of the reasons that you're giving, really, to give the employee an opportunity to rebut them and to bring evidence in their own defense. And that ties in directly with the second aspect of Section 2.6, which is that you shall be entitled to have a personal representative at said meeting. The arbitrator found that part and parcel of having a representative is the right to make an argument or raise your own defense. If we want to give this a narrow view, under the school district's view it's not even clear if an employee would have the right to say anything at the hearing. They simply would have a union representative with them. So the arbitrator gave this some meaning by saying, why would you have a representative if you don't also have the right to say something in your own defense and raise some of your own evidence? So, again, that aspect, the third aspect of the amended arbitration award can be directly traced to the text of Section 2.6. Why would you have the requirement of a personal representative if you don't also at least have some ability to raise evidence in your own defense? And those first two requirements are also tied in with that, because it's very difficult to raise a defense and try to persuade the decision maker if you're not apprised of the reasons why the decision maker is doing what they're doing. The last aspect of the amended arbitration award is, I think, what's really at issue here is that there's some limitation on the arbitrariness of the decisions. But this is really tied in with the first three procedure requirements. If the district had given her a statement of the specific acts or omissions, and had given her all of the other relevant information, and had given her the opportunity to confront the district's evidence and induce the evidence in defense, the ultimate decision would not have appeared arbitrary. So I think I can understand strategically why they want to focus on the substantive component of the arbitrator's decision. But it really is just saying if you make a decision based on no evidence and don't give the other party an opportunity to rebut it, then that decision is in essence arbitrary. And so if the district had complied with the procedural aspects of the decision, it's highly unlikely that the decision would have been found substantively arbitrary. Because the reason that it was arbitrary is it just seemed to be based on no facts, and it seemed to be based on things that an employee couldn't possibly rebut. How do you show that you don't smile enough? How do you show that you don't have a bad demeanor if there's no specific discussions about when you didn't smile enough or the consequences of having a bad demeanor, student complaints, teacher complaints, so on and so forth. So I think the substantive aspect of this case is very limited. The arbitrator's main concern here was that the evidence that was supplied was so vague and so difficult to rebut that the guarantees in Section 2.6 could not be provided in this case. Is there time remaining? Yes. You may. How much time is there left? Four or five minutes. Okay. I'm going to just supplement to his statements. There's been no discussion concerning a two-point – I'm sorry. The provision of the contract, which you'll find on page one of the collective bargaining agreement, relates to the personnel files of an employee and says, in part, the right of employee to, quote, add to and review material in her official personnel file. And that is consistent with the Illinois Personnel Review Act. The material, Justice Cook, that was provided to the grievant and to the union school board, had determined to discharge the grievant before the meeting in March. So you think she has a right to all these things before they make up their minds? There's no question about it because – You know, that is amazing to me. If the school board is thinking about discharging an employee, they have to have a hearing. And I think about that like with a state's attorney. Does the state's attorney's office decide to file a charge after they've determined the guy is guilty? Heck, yes. They don't go around filing charges after – They don't go around filing charges before they've made a determination that the charges are justified. Your Honor, the material that the principal shared in executive session with the school board in February was from her notebook, which was not part of the grievance personnel file. That is what she shared in executive session. After the union filed a grievance, that is before the March meeting, contesting the actions taken by the school board, then the superintendent conveyed shortly before the March meeting this material from the principal's notebook. Those documents, that information, these allegations were never placed in the individual's personnel file. And the contract – The principal is not allowed to make notes without putting them in the personnel file? No. You make all the notes she wants, but you can't use them, the notes, against the employee under the Illinois Personnel Review Act to discharge an employee and use them in a judicial or quasi-judicial proceeding. And the arbitrator makes – Unless they're made part of the personnel file. Unless they're made part of the – but they weren't. They never were. As a matter of fact, at the arbitration hearing, when the school board – and it's in the transcript – brought in the principal, she had to go to her office again in order to get these personal notes that were still not part of her personnel file, the grievance personnel file. There's hardly anything in the grievance personnel file that's negative. Remember, this person worked for over 10 years at the school district continuously. And the evidence showed that non-certified personnel were continued in employment from year to year unless they were notified of discharge. And this was the first situation that had occurred since the first collective bargaining agreement. Also, if you look at the collective bargaining agreement, with respect to budgetary issues, there's a whole provision concerning layoff of non-tenured – I'm sorry, non-certified personnel in the case of budgetary restraints. There's a whole other section of the collective bargaining agreement. Thank you. Your time has expired. I'd like to respond to Mr. Cornfield's statement because I believe that the sequence of events are important here as it relates to the personnel file argument, which I believe is a red herring. First of all, the Illinois Personnel Review Act provides, by its own provisions, Section 4, that materials that are not in the personnel file can be used if they are produced in a reasonable time for review of the information prior to the proceeding for discharge or discipline. In this case, there was a letter that was sent by the Board on, I believe it was March 4th. There was a letter, and I believe that meeting was with Superintendent Allen Hires and the union meeting – well, in fact, that was on March 3rd, Arbitration Transcript, page 133. And it was at that meeting that these notes from the principal were provided to Ms. Hires and her union representative. So there was clearly sufficient time for those provisions or that information to be available. Also, this is the normal course of events. As the testimony was, the Board meets in February to try to make up its mind with regard to personnel decisions that are going to have to be acted on in March. So it was raised with regard to Hires. There was – the testimony was that not only was Allen aware of these deficiencies, but all the members of the Board of Education had heard about complaints with Ms. Hires. Did Hires know about it? Not at that point, but she did subsequently right after that, shortly after that meeting. Then there was a letter that went to her. It set forth what the procedure, you know, what the problems were. And then there was the meeting, and they provided all of the information. And she requested and they allowed her to come to the Board of Education. That was after she was terminated? No, that was not before she was terminated. She was terminated after. This hearing was after she was terminated. No, the vote for termination occurred on March 19, 2008. It did not occur before. The Board met, and there was consensus that they should go forward with this matter. But the Board didn't vote until this meeting on the 19th. Another point that was brought up in oral argument, and this is one of those things that frosts me to no end, where it says we bargained for the arbitrator's judgment. We didn't bargain for that. The Illinois Educational Labor Relations Act says every collective bargaining agreement has got to have agreements and binding arbitration clause. We're stuck with that. I can't go to the table and bargain out that provision. That's against the law. So that is why it's extremely important to be able to have some review. If I could bargain that at the table, that would be a different story. Then I would be subject to that. Also, the bargaining history, I mean, why the union did what it did in terms of proposing that we mutually withdraw those procedures, I have no idea. But the Board jumped at it, and they agreed to it. Now the union wants to say, oh, well, we didn't mean quite that. We wound up with less than we thought we were going to get under the Board proposal. Well, if they had an opportunity to bargain that issue, and they decided they didn't want to do it. Thank you. Thank you, counsel. We'll take the matter under advice.